IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:05-CR-00028-KDB

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| KERRY SCOTT MARTIN, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Kerry Scott Martin's Motion for a Reduced Sentence under the First Step Act of 2018. (Doc. No. 54). Martin requests the Court enter a reduced sentence of 240 months in its discretion under Section 404 of the First Step Act. Having carefully reviewed the motion, the parties' briefs and exhibits, and all other relevant portions of the record, the Court will **GRANT** Martin's motion and reduce his sentence to 240 months.

I. BACKGROUND

Between 2003 and 2005, Martin participated in a drug-trafficking conspiracy in Wilkes County, North Carolina, that included both crack and powder cocaine and an unspecified amount of marijuana. Presentence Investigation Report ("PSR") ¶¶ 9-16.[1] Martin also obtained and sold firearms, many of which were stolen, and at one point claimed he had over ninety guns he needed to sell. *Id.* ¶ 11.

During an interview with an ATF Special Agent in March 2005, Martin stated that he began using cocaine and marijuana sometime around 1983 and began selling the drugs in 1985. He noted that he had been "in and out" of prison selling drugs since the 1980s. *Id.* ¶ 14. Indeed, at the time

---

[1] The Court obtained a copy of the original PSR from the United States Probation Office.

1

Martin committed the underlying offenses in this matter, he had previously been convicted of seven drug offenses and three assault offenses, one of which involved the use of a deadly weapon and another resulting in serious injury. *Id.* ¶¶ 49, 56, 58, 60, 64, 67-68, 71.

Martin was indicted and charged with three drug-trafficking offenses—conspiracy to possess with intent to distribute at least 5 grams of powder cocaine and at least 50 grams of crack cocaine, 21 U.S.C. § 846 (Count 1); possession with intent to distribute powder cocaine, 21 U.S.C. § 841 (Count 2); and possession with intent to distribute at least 5 grams of crack cocaine, 21 U.S.C. § 841 (Count 3). Martin was also indicted and charged with four firearm offenses—possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(e) (Counts 4, 5 & 7); and possession of stolen firearms, 18 U.S.C. § 922(j) (Count 6). The Government filed an information under 21 U.S.C. § 851, notifying Martin and the Court that it intended to seek an enhanced penalty based on Martin's prior convictions for felony drug offenses. (Doc. No. 6). In 2006, Martin entered into a plea agreement with the Government, agreeing to plead guilty to the drug-trafficking conspiracy offense and one felon-in-possession offense. (Doc. No. 32).

In preparation for sentencing, the United States Probation Office submitted a PSR in which it calculated a base offense level of 32 based on Martin's responsibility for at least 5 kilograms of cocaine. PSR ¶ 24. The Probation Officer classified Martin as a career offender due to his numerous prior drug-trafficking offenses and one of his assault offenses. *Id.* ¶ 38. After calculating in various enhancements, Martin received the highest adjusted offense level of 37, which was adjusted for acceptance of responsibility and resulted in a total offense level of 34. *Id.* ¶¶ 38-41. The resulting guidelines range was between 262 and 327 months based on Martin's total offense level of 34 and his criminal-history category of VI. *Id.* ¶ 107. However, Martin faced a statutory mandatory-minimum term of life in prison for the drug-trafficking offense based on the Section

851 notice and a mandatory-minimum of 180 months in prison for the firearm offense. *Id.* ¶ 106; (Doc. No. 55, at 1).

The Government withdrew its Section 851 notice as to all but one prior felony drug offense, which reduced the statutory range Martin was facing to 20 years to life. (Doc. Nos. 43, 55). Under the career-offender guideline, Martin faced a guidelines range of 262 to 327 months. The Court sentenced Martin to the low-end of the range at 262 months on the drug-trafficking conspiracy charge and a concurrent sentence of 180 months on the firearm offense. (Doc. No. 44). The Court recognized that the correct statutory penalty for the firearm offense (Count 4) was 15 years to life under the Armed Career Criminal Act, but that the issue was "moot due to the [higher] mandatory minimum in Count One." (Doc. No. 43, at 4).

As of December 2020, Martin has credit for 216 months in BOP custody. He now moves for a reduction in his sentence to 240 months under the First Step Act. The Government opposes the motion.

## II. LEGAL STANDARD

Finality is an important attribute of criminal judgments and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, a sentence of imprisonment is final and may not be modified once it has been imposed except in narrow circumstances as outlined in 18 U.S.C. § 3582(c). Section 3582(c)(1)(B) permits modification if it is expressly permitted by statute. The First Step Act expressly permits the Court to modify a term of imprisonment, and, as such, motions under Section 404 of the First Step Act fall under the purview of 18 U.S.C. § 3582(c)(1)(B).

As relevant here, the First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act "reduces the

3

statutory penalties for cocaine base offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the Fair Sentencing Act modified the drug quantities required to trigger mandatory minimum sentences for cocaine base (often referred to as crack cocaine) trafficking offenses; it increased the amount required to trigger the five-year mandatory minimum from 5 grams to 28 grams and increased the amount required to trigger the ten-year mandatory minimum from 50 grams to 280 grams. *See United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (citing Fair Sentencing Act, § 2, 124 Stat. at 2372). Section 3 eliminated the five-year mandatory minimum for simple possession of crack cocaine. *Id.* (citing Fair Sentencing Act, § 3, 124 Stat. at 2372).

The relevant provisions of the First Step Act apply to "a covered offense," which means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." § 404(a), 132 Stat. at 5222. The First Step Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404, 132 Stat. at 5222. "Even if a defendant is eligible for a sentence reduction, however, the decision whether to grant a reduction is entrusted to the district court's discretion." *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020) (citing § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.")). "When imposing a new sentence" under the First Step Act, "a court does not simply adjust the statutory minimum; it also must recalculate the Guidelines range," *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020) (internal quotation marks omitted), and "any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing," *id.* at 668. Moreover, "the [18 U.S.C.] § 3553(a)

4

sentencing factors apply in the § 404(b) resentencing context," and a court "may consider post-sentencing conduct" in determining whether to exercise its discretion to reduce a sentence. *Id.* at 674.

### III. DISCUSSION

When a defendant seeks a reduced sentence under Section 404 of the First Step Act, this Court's review proceeds in two steps. First, the Court must determine whether the defendant was sentenced for a "covered offense" as defined by the Act, and is, therefore, eligible for a sentence reduction. Here, the parties agree that Defendant is eligible for a reduction. *See United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019); *United States v. Gravatt*. 953 F.3d 258 (4th Cir. 2020).

Second, even if a defendant is eligible, the Court exercises its discretion in determining whether, and to what extent, to impose a reduced sentence. In doing so, the Court considers the Section 3553(a) factors, including recalculating the guidelines range and any mitigating evidence arising from the defendant's post-sentencing rehabilitation. *See United States v. McDonald*, __ F.3d __, 2021 WL 218888 (4th Cir. 2021); *Chambers*, 956 F.3d at 672; *United States v. Martin*, 916 F.3d 389 (4th Cir. 2019). District courts have broad discretion in deciding whether to grant a sentence reduction under Section 404 of the First Step Act. *See Jackson*, 952 F.3d at 495.

The parties spend much of their time arguing over whether the Fourth Circuit's recent decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), is retroactive. In *Norman*, the Fourth Circuit held that Section 846 offenses do not qualify as a generic conspiracy under the career offender guidelines of Section 4B1.2(b). If retroactive, this Court would be required to apply *Norman* and recalculate Martin's guidelines range without the career offender enhancement. *See United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020). Martin argues that *Norman* is retroactive, and, thus, he no longer qualifies as a career offender and his now-applicable guidelines range drops

5

from 262 to 327 months to 168 to 210 months of imprisonment.[2] (Doc. No. 54, at 8). The Government argues that *Norman* is not retroactive and therefore does not require the recalculation of Martin's guidelines range without the career-offender enhancement. (Doc. No. 58, at 6-7). The Court recognizes *Norman* and the implications it would have on Martin's sentence if he were sentenced today, but it need not decide whether it applies retroactively.

Even if this Court does not adopt his argument that it must correct the *Norman* error in calculating the now-applicable guidelines range, Martin argues the Section 3553(a) factors independently support a time served sentence. This is for two reasons: "(1) to avoid the disparity created by the original error in applying the career-offender enhancement; and (2) to reward Martin for his post-sentencing rehabilitation." (Doc. No. 51, at 14).

In support of his argument, Martin cites to numerous cases in which district courts have granted a sentence reduction under the Section 3553(a) factors in light of the disparity created by a "career-offender error" that occurred at the original sentencing. (Doc. No. 54, at 14-16). "As these cases show," Martin argues, "a reduced sentence of time served is necessary 'to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* at 17 (quoting 18 U.S.C. § 3553(a)(6)). Martin asserts that leaving his current sentence in place would create at least two kinds of disparity: (1) a disparity between Martin and crack-cocaine offenders who were originally sentenced based on drug weight (rather than a "now erroneous career offender enhancement"); and (2) a disparity between Martin and other crack-cocaine offenders who were previously sentenced as career offenders but who have received reductions under the First Step Act. *Id.*

---

[2] Martin would still face a statutory mandatory minimum of 240 months. (Doc. No. 55, at 3).

In addition to the need to avoid unwarranted sentence disparities, Martin argues that evidence of his post-sentencing rehabilitation warrants a reduction. Since his conviction in 2007, Martin has had only one disciplinary infraction that occurred over four years ago. (Doc. No. 55, at 3). Martin received his Bachelor of Science Degree in Business Administration from Glenville State College. (Doc. No. 54-3). Two teachers and an education technician wrote a letter of support for Martin, highlighting his work ethic and his job as a tutor in the Residential Electrical Wiring Class. (Doc. No. 54-4). Martin has completed over 50 educational and work-related programs and receives good remarks from his caseworker. (Doc. No. 54-2).

The Government, on the other hand, argues that the Section 3553(a) factors counsel against a reduction in Martin's sentence. Martin's history and characteristics include seven drug-trafficking offenses and three assault offenses, among other felonies, with short spans of time between criminal conduct. Despite receiving successive prison sentences that totaled more than 24 years in prison, Martin was not deterred from further criminal activity. Ultimately, Martin accrued 47 criminal-history points, more than three times the 13 criminal history points that would have placed him in the highest criminal history category of VI. "Because of Martin's extraordinary recidivism," the Government argues, "the need to protect the public from further offenses committed by Martin and the need to deter Martin and others from similar criminal misconduct [] weigh against a sentence reduction." (Doc. No. 58).

The Government does not agree that a failure to reduce Martin's sentence would result in unwarranted sentencing disparities among similarly situated defendants. It maintains that Martin was properly classified as a career offender at the time he was sentenced, and that his "criminal history . . . and extraordinary recidivism distinguishes him from the average defendant convicted of a drug-trafficking offense whose guideline range is governed by the drug-trafficking guideline."

(Doc. No. 58, at 8). Furthermore, the Government contends that if Martin's sentence is reduced, he would receive a benefit that similarly situated defendants sentenced after the effective date of the Fair Sentencing Act and before *Norman* did not receive. Accordingly, the Government urges the Court to leave Martin's 262-month sentence as is.

As for post-sentencing rehabilitation, the Government purports that Martin's post-sentencing conduct does not outweigh the sentencing factors that weigh against a sentence reduction. While Martin has a relatively clean disciplinary record and has completed educational classes and work assignments successfully, his conduct is not so extraordinary that it outweighs Martin's history of extraordinary, recidivist drug trafficking and the need to protect the public, deter Martin and others, and to provide just punishment.

The Court agrees that the balancing of the Section 3553(a) factors does not warrant a reduction, with one exception. The need to avoid unwarranted sentencing disparities among similarly situated defendants counsels in favor of a reduced sentence. There is no dispute that if Martin were sentenced today his guidelines range would be 168 to 210 months, with a statutory mandatory-minimum of 240 months. While Martin's criminal history and characteristics are serious and weigh against a reduction in his sentence, Martin's rehabilitation efforts are laudable and weigh in favor of the requested reduction. Balancing the 3553(a) factors and evidence of Martin's post-sentencing rehabilitation, the Court finds a sentence of 240 months is warranted. Thus, the Court will exercise its discretion under Section 404 of the First Step Act and reduce Martin's sentence accordingly.

## IV.     ORDER

**IT IS THEREFORE ORDERED** that Martin's Motion for Reduced Sentence under the First Step Act, (Doc. No. 54), is **GRANTED**. The Court **HEREBY ORDERS** that Martin's

term of imprisonment and commitment to custodial authorities is reduced to a sentence of **240 MONTHS** on Count One.

All other terms and conditions of Martin's sentence remain in full force and effect.

**SO ORDERED**.

Signed: February 22, 2021

Kenneth D. Bell
United States District Judge